*United States District Court*
*Southern District of Texas*
*RECEIVED* 2:39 P.M.
**MAY 14 2002**
Z. M.
**Michael N. Milby, Clerk of Court**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOHN GILBERT | § | |
| | § | CIVIL ACTION NO. B-01-54 |
| VS. | § | |
| | § | JURY DEMANDED |
| JIM HOGG COUNTY, TEXAS, ET AL. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
RULE 12(b)(6) MOTION TO DISMISS**

TO THE HONORABLE JUDGE OF SAID COURT:

The Court should deny Defendants' Rule 12(b)(6) Motion to Dismiss. In this response, Plaintiff shows that he pled claims upon which relief can be granted. Plaintiff also sets out his objections to Defendants' improper attempt to incorporate–without even providing evidence–factual matters not contained in Plaintiff's First Amended Complaint in their Motion to Dismiss.

## I.    The Standard for Deciding 12(b)(6) Motions

The Fifth Circuit has recently set out the standard for deciding Rule 12(b)(6) motions:

> A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted. *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.3d 1045, 1050 (5th Cir. 1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). The district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41,45-46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957). The strict standard of review under Rule 12(b)(6) has been summarized as follows: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE &

PROCEDURE § 1357, at 601 (1969).

*Collins v. Morgan Stanley Dean Witter*, 222 F.3d 496, 498 (5th Cir. 2000), *quoting Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). In considering a 12(b)(6) motion, "a district court must limit itself to the contents of the pleadings." *Collins*, 222 F.3d at 498; *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984).

## II.    Defendants' Motion Is Improper Because It Does Not Stick To The Pleadings

As a preliminary matter, Plaintiff objects to Defendants' Motion to Dismiss because it references many alleged facts that are not contained anywhere in Plaintiff's pleadings. *See Milburn*, 734 F.2d at 765 (holding that "[c]onsideration of matters beyond the complaint is improper in the context of a motion to dismiss"). For example, Defendants claim that Defendant Bolch stopped Plaintiff's vehicle after he "noted violations by Plaintiff and his passenger including excessive muffler noise through 'revving' the engine of the Ford Mustang driven by Plaintiff, failure by the front seat passenger to wear her seat belt, and failure to display a front license plate." (Motion to Dismiss, at 3). However, in his Complaint–the allegations of which must be taken as true for the purpose of ruling on a Rule 12(b)(6) motion–Plaintiff alleged that Bolch did not actually note such violations. (First Amended Complaint, at ¶¶ 4.17 - 4.21). Further, nowhere in his Complaint does Plaintiff even mention a claim by Defendant that he did not have a front license plate. (*See, generally* First Amended Complaint). Further, Defendants provided no evidence with their motion, and gave no citation to enlighten the Court and Plaintiff as to the source of the facts set out in their motion.

Another instance in which Defendants referenced alleged facts not contained in

Plaintiff's pleadings was when Defendants claimed, "Plaintiff was also arrested for disorderly conduct as he used profanity against Defendant Bolch while detained in a residential area in front of a school on a weekday afternoon." (Motion to Dismiss, at 4). Plaintiff did not allege such facts in his complaint. He only alleged that he was unlawfully charged with disorderly conduct in retaliation for his exercise of his free speech rights. (First Amended Complaint at ¶¶ 4.64 - 4.65).

Defendants also attempt to somehow impose a burden upon Plaintiff to plead denials of claims that Defendants had not even made at the time the Plaintiff filed his lawsuit. Specifically, Defendants contend, "Failing to display a front license plate and failing to wear a seat belt while occupying a front seat of an automobile violates Texas law, and neither infraction was denied by Plaintiff in his complaint." Plaintiff's complaint does not even address the issue of whether he displayed a front license plate. In fact, Plaintiff was not cited for failure to display a front license plate, and nothing in the arrest records addresses that contention. Further, in his complaint, Plaintiff explicitly pleaded that, prior to stopping Plaintiff, Defendant did not know that his passenger was unbelted. (First Amended Complaint, at ¶ 4.19) (alleging "Defendant Bolch could not have known whether or not Plaintiff's passenger was wearing a seat belt because the windows in the 1994 Mustang were darkly tinted"). This attempt to impose a new pleading requirement on Plaintiff is improper.

### III.    Plaintiff Has Adequately Pled Section 1983 Claims

#### A.    False Arrest

John Gilbert has plead adequate facts to support a Section 1983 claim for false arrest.

Gilbert has a constitutional right under the Fourth and Fourteenth Amendments to be free from illegal arrest. This right has been clearly established since at least 1992. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992) ("An individual has a federally protected right to be free from unlawful arrest and detention resulting in a significant restraint of liberty and violation of this right may be grounds for suit under 42 U.S.C. § 1983"). To show that an arrest was illegal, Gilbert must show that there was no probable cause for the arrest. *Baker v. McCollan*, 443 U.S. 137, 144-45, 99 S. Ct. 2689, 2694-95, 61 L.Ed.2d 433 (1979). There is probable cause when an arresting officer "possesses knowledge that would warrant a prudent person's belief that [the suspect] had already committed or was committing a crime."

Defendant Bolch claimed to have probable cause to arrest Gilbert on two charges, unlawful carrying of a firearm in violation of Texas Penal Code § 46.02, and disorderly conduct in violation of Texas Penal Code § 42.01. However, based on the facts as set out in the First Amended Complaint,[1] Defendant Bolch did not have probable cause to arrest Gilbert on either charge.

Defendant Bolch did not have probable cause to arrest Gilbert for unlawful carrying of a firearm. Gilbert is a United States Border Patrol Officer, and as such is authorized by federal law to carry a firearm. 8 U.S.C. § 1357(a) ("an officer or employee of the [INS] may carry a firearm") 8 C.F.R. § 287(f)(Border Patrol agents authorized to carry firearms); (First Amended Complaint, at ¶¶ 4.1 - 4.2; Exhibits B & C).

Further, Defendant Bolch is not entitled to qualified immunity based upon his claim that he was merely mistaken on the law. Bolch apparently claims that, because a Border

---

[1] Which, for the purposes of Defendants' 12(b)(6) motion, the Court must accept as true.

Patrol agents are not within the category of persons defined as "peace officers" as defined by Texas Code of Criminal Procedure Art. 2.12, he was justified in believing that Border Patrol agents were not allowed to carry firearms. However, Bolch's interpretation of the law makes no sense. Article 2.12 only includes officers commissioned by the State of Texas or one of its political subdivisions; it does not include **any** Federal law enforcement officers. Under Defendants' proposed interpretation of the law, no Federal law enforcement officer–whether FBI, DEA, ATF, or Border Patrol–could carry a firearm in the State of Texas. Such an interpretation of the law is so ridiculous that not even an officer as undertrained and undereducated as Defendant Bolch could find it reasonable. Further, Federal law explicitly permits Border Patrol agents to carry firearms. 8 U.S.C. § 1357; 8 C.F.R. § 287.5. Given that the Supremacy Clause of the United States is well-established law, no reasonable officer could have interpreted state law to trump the Federal law that gives Gilbert the right to carry a firearm. Therefore, Defendants are not entitled to qualified immunity. Finally, Federal law is clear. The statute (8 U.S.C. § 1357(a)), regulation (8 C.F.R. § 287(f)) and the INS Administrative Manual's Firearms Policy all authorize Gilbert to carry a firearm. There is no reason for Defendants to have disregarded this clear, well-established law.

Similarly, there was no probable cause to arrest Gilbert for disorderly conduct. First, it is important to note that, in his First Amended Complaint, Plaintiff alleged that he was charged with disorderly conduct in retaliation for his exercise of his free speech rights by protesting his unlawful arrest and detention. (First Amended Complaint, at ¶¶ 4.64 - 4.65). Therefore, given that for the purposes of this motion the Court cannot go beyond the pleadings, and that it must take all matters alleged in the complaint as true, there is no

question that the facts pled show a lack of probable cause.

Even if the Court were to go beyond the pleadings and consider Defendant Bolch's explanation—that he arrested Gilbert for using the word "shit"—there would be no probable cause to arrest him for disorderly conduct. Texas law does not criminalize every utterance of profanity; only "fighting words." *Spiller v. City of Texas City*, 130 F.3d 162, 165 (5th Cir. 1997). "Fighting words" are those "likely to cause an average addressee to fight." *Ross v. Texas*, 802 S.W.2d 308, 314 (Tex. App.–Dallas 1990). Telling a police officer to move his "damn truck," or calling a police officer "estupido" or an "idiot" does not constitute fighting words. *See Spiller*, 130 F.3d at 165 (holding that Plaintiff could maintain a Section 1983 claim for false arrest where he was arrested for telling a police officer to move his "damn truck"); *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 785 (Tex. App.–El Paso 1996, writ denied) (holding that a woman who called a police officer "estupido" or an "idiot" during a parking dispute could not be arrested for disorderly conduct). Further, a police officer should "reasonably be expected to exercise a higher degree of restraint than an average citizen, and thus be less likely to respond belligerently to fighting words." *Spiller*, 130 F.3d at 165, *quoting Lewis v. New Orleans*, 415 U.S. 130, 135, 94 S. Ct. 970, 973, 39 L. Ed. 2d 214 (1974). Therefore, no one could reasonably believe that telling a police officer, "y'all never do shit anyway" would cause an average police officer to fight, and there was no probable cause to arrest Gilbert.

Similarly, there is no qualified immunity to protect Defendant Bolch from illegally arresting Gilbert. As the cases cited above show, the law was clear long before Gilbert's arrest that an officer could not arrest someone for mere profanity that did not rise to the level of fighting words. In fact, the *Spiller* case, decided before Gilbert's arrest, specifically

allowed a Section 1983 claim for a similar arrest. Therefore, there is no qualified immunity.

Defendant Ybanez also has individual liability for Gilbert's false arrest. First, Gilbert pled that Defendant Ybanez charged Gilbert with disorderly conduct. (First Amended Complaint, at ¶ 4.65). Gilbert also pled that Defendant Ybanez "violated Plaintiff's rights by approving Plaintiff's arrest and detention, and by having Plaintiff charged with untrue allegations of criminal conduct." (First Amended Complaint, at ¶ 5.4). That is, Gilbert intends to prove that Defendant Ybanez actually authorized the arrest, detention, and filing of criminal charges against Gilbert. Given that there was no probable cause to arrest, detain, or charge Gilbert on either charge, Ybanez violated Gilbert's constitutional rights.

### B.    Excessive Force

Although Defendants' 12(b)(6) motion does not address Gilbert's excessive force claim, it is discussed here because Defendant asked that Plaintiff's entire suit be dismissed. Plaintiff alleged that Defendant Bolch violated his rights under the Fourth and Fourteenth Amendment to the United States Constitution by slamming a car door on his knee. (First Amended Complaint, at ¶ 5.3). This wholly unnecessary force is sufficient to support a Section 1983 claim. *See Graham v. Connor*, 490 U.S. 386, 395-96, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

### C.    County Liability

Defendant Jim Hogg County is liable for the civil rights violations committed by Defendants Bolch and Ybanez for two reasons. First, it is liable for any decision or action of Ybanez because, as Sheriff, he is a policymaker for the county. *See Brown v. Bryan*

*County, Ok.*, 219 F.3d 450 (5th Cir. 2000)(First Amended Complaint, at ¶ 5.6).  Second, the county is liable for Bolch's actions because they arose out of a pattern of harassing Border Patrol agents.  *See, e.g., Pembaur v. Cincinnati*, 475 U.S. 469, 480-81, 106 S. Ct. 1292, 1298-99, 89 L. Ed. 2d 452 (1986).  Gilbert pled that this pattern was so pervasive that it constituted a policy, practice, and custom.  (First Amended Complaint, at ¶¶ 4.9 - 4.11).

Further, in discovery Plaintiff has learned that Defendant Bolch was woefully undertrained.  Failure to train a law enforcement officer can give rise to municipal liability.  *See City of Canton v.* Harris, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)(holding that "the failure to provide proper training may fairly be said to represent a policy for which the city may be held liable"); *Brown v. Bryan County, Ok.*, 219 F.3d 450, 457 (5th Cir. 2000)(noting, "It is clear that a municipality's policy of failing to train its police officers can give rise to § 1983 liability").  Therefore, Gilbert has sought leave to amend his complaint to add failure-to-train allegations.

## D.    Unconstitutional Jail Conditions

Counties have an affirmative duty to provide for inmates' basic human needs, such as food, clothing, shelter, medical care, and reasonable safety.  *See DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *see also Tesch v. County of Green Lake,* 157 F.3d 465, 472 (7th Cir.1998).  The Constitution prohibits counties from punishing inmates by depriving them of their basic needs.  "Unlike convicted prisoners whose constitutional protections are primarily based in the Eighth Amendment's prohibition on cruel and unusual punishment, state pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment."  *Tesch,* 157 F.3d at

472 (citations omitted).   A pretrial detainee's Due Process Clause protections are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); *Tesch;* 157 F.3d at 473. Thus, courts rely on Eighth Amendment prisoner cases in deciding Fourteenth Amendment detainee cases. A particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose. *Rapier v. Harris,* 172 F.3d 999, 1004 (7th Cir.1999).

The jail conditions set out in the complaint are so deplorable that they constitute impermissible punishment.   There was a complete lack of sanitation, which is a health hazard.   There were feces in and around the toilet, pubic hairs embedded in the mattress cover, and the mattress had not been washed in a long time.  (First Amended Complaint, at ¶¶ 4.60 - 4.64).  Plaintiff suffered more than a *de minimus* injury through the horror of being subjected to such conditions.

## IV.    **Plaintiff Has Pled Proper State Law Claims**

Defendants have sought the dismissal of Plaintiff's state law claims on two grounds. First, they claim that they are entitled to official immunity.  Second, they claim that Plaintiff cannot sue the County for negligence because Plaintiff plead, in the alternative, that Bolch's actions were intentional.  Both of these arguments are misplaced.

Defendants are not entitled to official immunity for the same reason that they are not entitled to qualified immunity.  That is, they did not act in good faith.  An officer acts in good

faith when "a reasonable official could have believed his or her conduct to be lawful in light of clearly established law." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). However, Defendants could not have reasonably believed that their conduct was lawful. First, with regard to charging Gilbert with unlawfully carrying a weapon, no reasonable officer could have believed that Border Patrol officers were not allowed to carry weapons. This is especially true in light of the fact that Gilbert informed Bolch of the law, and showed him his credentials, which explicitly allow him to carry a firearm. (First Amended Complaint, at ¶¶ 4.38-4.39). Second, with respect to the disorderly conduct charge, the well-established law discussed elsewhere in this response clearly shows that Gilbert did not violated the law by uttering the word "shit." Finally, with respect to the assault and negligence claims for slamming a car door into Gilbert's leg, no reasonable officer could believe that he had the legal authority to rough up detainees for no reason. Therefore, Defendants are not entitled to official immunity.

Defendants argument with respect to Plaintiff's negligence claim–that Plaintiff is not permitted to plead in the alternative–borders on frivolity. Federal Rule of Civil Procedure 8(e)(2) explicitly permits pleading in the alternative. There is no question that Plaintiff has pled an actionable negligence claim under the Texas Tort Claims Act. The car door constitutes tangible personal property, and Bolch's negligence is therefore actionable. *See* Tex. Civ. Prac. & Rem. Code § 101.021.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Court DENY Defendant's Rule 12(b)(6) Motion to Dismiss.

RESPECTFULLY SUBMITTED,

MICHAEL R. COWEN, P.C.
765 E. 7th Street, Suite A
Brownsville, Texas 78520
Telephone (956) 541-4981
Facsimile (956) 504-3674

By: _____
Michael R. Cowen
S.D. Tex. ID No. 19967
Texas Bar No. 00795306

## CERTIFICATE OF SERVICE

I, Michael R. Cowen, hereby certify that I have sent a copy of this motion to opposing counsel by facsimile and regular mail on this the 14th day of May, 2002.

_____
Michael R. Cowen

# Exhibit A

# 8 U.S.C. § 287

§ 287.5                                                                          8 CFR Ch. I (1–1–02 Edition)

(2) *Proceedings other than naturalization proceedings.* Every subpoena issued under the provisions of this section shall state the title of the proceeding and shall command the person to whom it is directed to attend and to give testimony at a time and place specified. A subpoena shall also command the person to whom it is directed to produce the books, papers, or documents specified in the subpoena. A subpoena may direct the making of a deposition before an officer of the Service.

(c) *Service.* A subpoena issued under this section may be served by any person, over 18 years of age not a party to the case, designated to make such service by the District Director, Deputy District Director, Chief Patrol Agent, Deputy Chief Patrol Agent, Assistant Chief Patrol Agent, Patrol Agent in Charge, Officer in Charge, Assistant District Director, Investigations, Supervisory Criminal Investigator (Anti-Smuggling), Regional Director, and Office of Professional Responsibility, having administrative jurisdiction over the office in which the subpoena is issued. Service of the subpoena shall be made by delivering a copy thereof to the person named therein and by tendering to him/her the fee for one day's attendance and the mileage allowed by law by the United States District Court for the district in which the testimony is to be taken. When the subpoena is issued on behalf of the Service, fee and mileage need not be tendered at the time of service. A record of such service shall be made and attached to the original copy of the subpoena.

(d) *Invoking aid of court.* If a witness neglects or refuses to appear and testify as directed by the subpoena served upon him or her in accordance with the provisions of this section, the officer or immigration judge issuing the subpoena shall request the United States Attorney for the district in which the subpoena was issued to report such neglect or refusal to the United States District Court and to request such court to issue an order requiring the witness to appear and testify and to

produce the books, papers, or documents designated in the subpoena.

[50 FR 30134, July 24, 1985; 50 FR 47205, Nov. 15, 1985, as amended at 60 FR 56937, Nov. 13, 1995; 62 FR 10390, Mar. 6, 1997]

§ 287.5  Exercise of power by immigration officers.

(a) *Power and authority to interrogate and administer oaths.* Any immigration officer as defined in § 103.1(q) of this chapter is hereby authorized and designated to exercise anywhere in or outside the United States the power conferred by:

(1) Section 287(a)(1) of the Act to interrogate, without warrant, any alien or person believed to be an alien concerning his or her right to be, or to remain, in the United States, and

(2) Section 287(b) of the Act to administer oaths and to take and consider evidence concerning the privilege of any person to enter, reenter, pass through, or reside in the United States; or concerning any matter which is material or relevant to the enforcement of the Act and the administration of the Immigration and Naturalization Service.

(b) *Power and authority to patrol the border.* The following immigration officers who have successfully completed basic immigration law enforcement training are hereby authorized and designated to exercise the power to patrol the border conferred by section 287(a)(3) of the Act:

(1) Border patrol agents, including aircraft pilots;

(2) Special agents;

(3) Immigration inspectors (seaport operations only);

(4) Adjudications officers and deportation officers when in the uniform of an immigration inspector and performing inspections or supervising other immigration inspectors performing inspections (seaport operations only);

(5) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(6) Immigration officers who need the authority to patrol the border under section 287(a)(3) of the Act in order to effectively accomplish their individual

missions and who are designated, individually or as a class, by the Commissioner.

(c) *Power and authority to arrest*—(1) *Arrests of aliens under section 287(a)(2) of the Act for immigration violations.* The following immigration officers who have successfully completed basic immigration law enforcement training are hereby authorized and designated to exercise the arrest power conferred by section 287(a)(2) of the Act and in accordance with § 287.8(c):

(i) Border patrol agents, including aircraft pilots;

(ii) Special agents;

(iii) Deportation officers;

(iv) Immigration inspectors;

(v) Adjudications officers;

(vi) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(vii) Immigration officers who need the authority to arrest aliens under section 287(a)(2) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner.

(2) *Arrests of persons under section 287(a)(4) of the Act for felonies regulating the admission or removal of aliens.* The following immigration officers who have successfully completed basic immigration law enforcement training are hereby authorized and designated to exercise the arrest power conferred by section 287(a)(4) of the Act and in accordance with § 287.8(c):

(i) Border patrol agents, including aircraft pilots;

(ii) Special agents;

(iii) Deportation officers;

(iv) Immigration inspectors;

(v) Adjudications officers;

(vi) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(vii) Immigration officers who need the authority to arrest persons under section 287(a)(4) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner with the approval of the Deputy Attorney General.

(3) *Arrests of persons under section 287(a)(5)(A) of the Act for any offense against the United States.* The following immigration officers who have successfully completed basic immigration law enforcement training are hereby authorized and designated to exercise the arrest power conferred by section 287(a)(5)(A) of the Act and in accordance with § 287.8(c):

(i) Border patrol agents, including aircraft pilots;

(ii) Special agents;

(iii) Deportation officers;

(iv) Immigration inspectors (permanent full-time immigration inspectors only);

(v) Adjudications officers when in the uniform of an immigration inspector and performing inspections or supervising other immigration inspectors performing inspections;

(vi) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(vii) Immigration officers who need the authority to arrest persons under section 287(a)(5)(A) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner with the approval of the Deputy Attorney General.

(4) *Arrests of persons under section 287(a)(5)(B) of the Act for any felony.* (i) Section 287(a)(5)(B) of the Act authorizes designated immigration officers, as listed in paragraph (c)(4)(iii) of this section, to arrest persons, without warrant, for any felony cognizable under the laws of the United States if:

(A) The immigration officer has reasonable grounds to believe that the person to be arrested has committed or is committing such a felony;

(B) The immigration officer is performing duties relating to the enforcement of the immigration laws at the time of the arrest;

(C) There is a likelihood of the person escaping before a warrant can be obtained for his or her arrest; and

(D) The immigration officer has been certified as successfully completing a training program that covers such arrests and the standards with respect to the enforcement activities of the Service as defined in § 287.8.

701

**Immigration and Naturalization Service, Justice**                    **§ 287.5**

(6) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(7) Immigration officers who need the authority to conduct searches under section 287(c) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner.

(e) *Power and authority to execute warrants*—(1) *Search warrants.* The following immigration officers who have successfully completed basic immigration law enforcement training are hereby authorized and designated to exercise the power conferred by section 287(a) of the Act to execute a search warrant:

(i) Border patrol agents, including aircraft pilots;

(ii) Special agents;

(iii) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph, and

(iv) Immigration officers who need the authority to execute search warrants under section 287(a) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner with the approval of the Deputy Attorney General.

(2) *Issuance of arrest warrants for immigration violations.* A warrant of arrest may be issued only by the following immigration officers:

(i) District directors (except foreign);

(ii) Deputy district directors (except foreign);

(iii) Assistant district directors for investigations;

(iv) Deputy assistant district directors for investigations;

(v) Assistant district directors for deportation;

(vi) Deputy assistant district directors for deportation;

(vii) Assistant district directors for examinations;

(viii) Deputy assistant district directors for examinations;

(ix) Officers in charge (except foreign);

(x) Assistant officers in charge (except foreign);

(xi) Chief patrol agents;

(xii) Deputy chief patrol agents;

(xiii) Associate chief patrol agents;

(xiv) Assistant chief patrol agents;

(xv) Patrol agents in charge;

(xvi) The Assistant Commissioner, Investigations;

(xvii) Institutional Hearing Program directors;

(xviii) Area port directors;

(xix) Port directors; or

(xx) Deputy port directors.

(3) *Service of warrant of arrests for immigration violations.* The following immigration officers who have successfully completed basic immigration law enforcement training are hereby authorized and designated to exercise the power pursuant to section 287(a) of the Act to execute warrants of arrest for administrative immigration violations issued under section 236 of the Act or to execute warrants of criminal arrest issued under the authority of the United States:

(i) Border patrol agents, including aircraft pilots;

(ii) Special agents;

(iii) Deportation officers;

(iv) Detention enforcement officers (warrants of arrest for administrative immigration violations only);

(v) Immigration inspectors;

(vi) Adjudications officers when in the uniform of an immigration inspector and performing inspections or supervising other immigration inspectors performing inspections;

(vii) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(viii) Immigration officers who need the authority to execute arrest warrants for immigration violations under section 287(a) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner, for warrants of arrest for administrative immigration violations, and with the approval of the Deputy Attorney General, for warrants of criminal arrest.

(4) *Service of warrant of arrests for non-immigration violations.* The following immigration officers who have successfully completed basic immigration law enforcement training are hereby authorized and designated to exercise the

power to execute warrants of criminal arrest for non-immigration violations issued under the authority of the United States:

(i) Border patrol agents, including aircraft pilots;

(ii) Special agents;

(iii) Deportation officers;

(iv) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(v) Immigration officers who need the authority to execute warrants of arrest for non-immigration violations under section 287(a) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner with the approval of the Deputy Attorney General.

(f) *Power and authority to carry firearms.* The following immigration officers who have successfully completed basic immigration enforcement training are hereby authorized and designated to exercise the power conferred by section 287(a) of the Act to carry firearms provided that they are individually qualified by training and experience to handle and safely operate the firearms they are permitted to carry, maintain proficiency in the use of such firearms, and adhere to the provisions of the enforcement standard governing the use of force in § 287.8(a):

(1) Border patrol agents, including aircraft pilots;

(2) Special agents;

(3) Deportation officers;

(4) Detention enforcement officers;

(5) Immigration inspectors;

(6) Adjudications officers when in the uniform of an immigration inspector and performing inspections or supervising other immigration inspectors performing inspections;

(7) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(8) Immigration officers who need the authority to carry firearms under section 287(a) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commis-

sioner with the approval of the Deputy Attorney General.

[59 FR 42415, Aug. 17, 1994, as amended at 62 FR 10390, Mar. 6, 1997]

§ 287.6  Proof of official records.

(a) *Domestic.* In any proceeding under this chapter, an official record or entry therein, when admissible for any purpose, shall be evidenced by an official publication thereof, or by a copy attested by the official having legal custody of the record or by an authorized deputy.

(b) *Foreign: Countries not Signatories to Convention.* (1) In any proceeding under this chapter, an official record or entry therein, when admissible for any purpose, shall be evidenced by an official publication thereof, or by a copy attested by an officer so authorized. This attested copy in turn may but need not be certified by any authorized foreign officer both as to the genuineness of the signature of the attesting officer and as to his/her official position. The signature and official position of this certifying foreign officer may then likewise be certified by any other foreign officer so authorized, thereby creating a chain of certificates.

(2) The attested copy, with the additional foreign certificates if any, must be certified by an officer in the Foreign Service of the United States, stationed in the foreign country where the record is kept. This officer must certify the genuineness of the signature and the official position either of (i) the attesting officer; or (ii) any foreign officer whose certification of genuineness of signature and official position relates directly to the attestation or is in a chain of certificates of genuineness of signature and official position relating to the attestation.

(c) *Foreign: Countries Signatory to Convention Abolishing the Requirement of Legislation for Foreign Public Document.* (1) In any proceeding under this chapter, a public document or entry therein, when admissible for any purpose, may be evidenced by an official publication, or by a copy properly certified under the Convention. To be properly

# Exhibit B

# Excerpt from
# INS Firearms Policy

**U.S. Department of Justice**
Immigration and Naturalization Service

# INS FIREARMS POLICY



*AUGUST 1996*

ADMINISTRATIVE MANUAL SECTION 20.012

**J.**    Range Safety Officers

(1)    Authorizing Officials shall designate INS officers to perform collateral duties as Range Safety Officers. Designation of these officers shall be based on the following criteria:

(1)    A knowledge of firearms and firearms safety;

(2)    An aptitude for maintaining firearms safety during training, practice and qualifications.

(2)    Range Safety Officers are responsible for assisting Firearms Instructors during firearms training, practice or qualification sessions.

**K.**    Individual Service Officers Authorized to Carry Firearms

Individual Service officers authorized to carry firearms pursuant to this policy are responsible for being familiar with this policy and adhering to all relevant aspects thereof.

**5.**    Service Officers Authorized to Carry Firearms:

**A.**    The following Immigration Officers who have successfully completed Basic Immigration Law Enforcement Training, as defined in Subsection 3.C., are authorized and designated to exercise the power conferred by Section 287(a) of the Immigration and Nationality Act to carry firearms, during duty and non-duty hours, provided they are individually qualified by training and have demonstrated their ability to handle and safely operate the firearms that they are permitted to carry; maintain proficiency in the use of firearms; and adhere to the provisions of the policy governing the use of force.

(1)    Border Patrol Agents, including Border Patrol Aircraft Pilots;

(2)    Special Agents and Immigration Agents;

(3)    Deportation Officers, including Deportation Aircraft Pilots;

(4)    Detention Enforcement Officers;

(5)    Immigration Inspectors;

(6)    Adjudications Officers (See note below);

NOTE: The authority of Adjudications Officers to carry a firearm is specifically limited to those officers who have successfully completed the Service's Basic Marksmanship Instruction and Practical Pistol Courses as defined in Subsection 3.E. and are assigned to perform duties as an Inspector in a location which requires the carrying of a handgun. This authority permits transporting a handgun to and from such duty assignments, including training and quarterly qualifications, but may not be expanded to include carrying the handgun while off duty. Adjudications Officers are temporarily issued handguns only for those assignments which require the carrying of a handgun. Upon return to the office, the handgun will be turned in. Each office employing Adjudications

Officers to perform inspectional duties requiring the carrying of a handgun will maintain a sufficient quantity of unassigned Inspections Program handguns for this purpose.

(7)    Immigration Officers and other Service employees who are granted the authority to carry a firearm, either individually or as a class, by the Commissioner with the approval of the Deputy Attorney General; and,

(8)    Officers who are responsible for supervising the activities of those officers listed above.

6.    <u>Guidelines for Carrying Firearms</u>:

A.    (1)    Service authorization to carry a personally-owned handgun during duty hours or non-duty hours shall be limited specifically to Service-approved handguns in accordance with Subsection 18 and Appendix 1 (A and B). Where an officer is authorized under Subsection 21 to carry a non-standard Service-issued or approved handgun <u>exclusively</u> for an approved undercover operation, the officer is authorized to carry the handgun during duty and non-duty hours until such time as the undercover operation is completed or terminated.

B.    (1)    Service officers listed in Subsection 5.A.(1)-(8) are <u>required</u> to carry a Service-issued or approved handgun, and may be required to carry other firearms, during duty hours in the performance of their normal duties.

(2)    Exceptions to this requirement are:

(a)    Immigration Inspectors who were employed prior to November 1, 1989, and were granted a written personal exemption from the requirement prior to that date; and,

(b)    Adjudications Officers who are not assigned to conduct inspections.

(3)    This subsection is not intended to require a Service officer to carry a handgun or other firearm while performing duties where the carrying of a firearm is inappropriate, such as performing routine office work, testifying in court, etc.

(4)    Additionally, as outlined in Subsection 17.B., except in emergency situations, officers may decline to carry a longarm.

C.    Service-issued or approved firearms shall be carried loaded with the Service-designated number of rounds for that firearm. Only Service-issued ammunition is authorized for duty carry and use by INS officers.

D.    As described in Subsection 24, INS officers must be able, at any time, to demonstrate an acceptable level of proficiency with each type of firearm they are authorized to carry.

E.    INS officers must be able to demonstrate an acceptable knowledge of the elements necessary to justify the use of deadly force.

F.    The authority of either a single officer or a group of officers to carry a firearm during duty and/or non-duty hours may be withdrawn or restricted by the Authorizing Official when the withdrawal

# Exhibit C

# Gilbert's Credentials



UNITED STATES

# DEPARTMENT OF JUSTICE

THIS IS TO CERTIFY THAT

### JOHN A. GILBERT

WHOSE SIGNATURE AND PHOTOGRAPH APPEAR BELOW

IS DULY APPOINTED AS A

## BORDER PATROL AGENT

OF THE

## IMMIGRATION AND NATURALIZATION SERVICE

G-550A

WHO IS AUTHORIZED TO ENFORCE THE IMMIGRATION LAWS AND REGULATIONS OF THE UNITED STATES AND ANY OTHER LAWS OR REGULATIONS DESIGNATED BY THE ATTORNEY GENERAL IN THE PERFORMANCE OF THOSE DUTIES IS EMPOWERED TO CONDUCT INVESTIGATIONS, CARRY FIREARMS, EFFECT WARRANTLESS ARRESTS OR EXECUTE ANY ORDER, WARRANT OF ARREST, SUBPOENA, SUMMONS, OR OTHER PROCESS ISSUED UNDER THE AUTHORITY OF THE UNITED STATES.

BY AUTHORITY OF

U.S.

BORDER

PATROL

ASSISTANT COMMISSIONER BORDER PATROL

SIGNATURE OF BEARER

04829

G-550B