United States District Court
Southern District of Texas
FILED

OCT 30 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOHN GILBERT | § | CIVIL ACTION NO. B-01-054 |
| | § | |
| VS. | § | |
| | § | |
| JIM HOGG COUNTY, TEXAS, | § | |
| ISAAC BOLCH, in his Individual | § | JURY DEMANDED |
| and Official Capacities, and | § | |
| GILBERT YBANEZ, in his | § | |
| Individual and Official Capacities | § | |

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW DEFENDANTS and file this their Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment and for cause would respectfully show unto the Court the following:

### I.  Plaintiff's stop was valid

To satisfy Fourth Amendment dictates regarding traffic stops, the officer only needs to articulate more than a "hunch" of illegal activity. *Illinois v. Wardlow,* 528 U.S. 119, 123-24, 120 S.Ct. 673 (2000). The Fourth Amendment only requires a "minimal level of objective justification for making the stop." *Id.* at 123 (emphasis added).

Plaintiff admits that his front seat passenger failed to wear her seatbelt, which is a violation of state traffic laws. Plaintiff claims that Defendant Bolch could not have seen this violation because the windows were darkly tinted. Plaintiff has been unable to produce any evidence to dispute the evidence which shows Bolch did see this violation of law. Thus, even disregarding the other reasons Bolch had for pulling Plaintiff over, this stop was valid. Plaintiff's statement is merely conclusory

and cannot defeat summary judgment. *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991).

## II. Probable cause existed for Plaintiff's arrest

Defendant Bolch had probable cause to arrest Plaintiff for two reasons: disorderly conduct and unlawful carrying of a weapon. A showing of probable cause requires less evidence than is necessary to support a conviction. *See United States v. Ashcroft*, 607 F.2d 1167, 1170 (5th Cir.1979). "Claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge made during the course of the arrest." *Price v. Roark*, 256 F.3d 364 (5th Cir.2001)(citing *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir.1995)). Thus, if there was probable cause for any of the charges then the arrest was supported by probable cause, and there can be no false arrest claim. *Id.*

Deputy Bolch reasonably believed that Plaintiff was violating state laws. The Supreme Court acknowledges when dealing with probable cause "we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302 (1949).*

Plaintiff claims that his arrest was invalid because the words which he said did not constitute disorderly conduct and he further claims federal regulation and internal INS policy allowed him to validly possess a firearm without meeting exceptions to unlawfully carrying a weapon under Texas law. This is the type of situation contemplated by the Supreme Court in *Brinegar*. Deputy sheriffs are not expected to have the same knowledge as legal scholars; they are only required to have facts and circumstances that would cause a person of reasonable caution to believe a person has committed any offense. *Brinegar; United States v. Woolery, 670 F.2d 513, 515 (5th Cir.1982).* Probable cause turns on the officer's evaluation of reasonable inferences from the facts known to him. *See United States v. Rash, 424 F.2d 1037, 1038 (5th Cir. 1970).*

Probable cause is not destroyed by a suspect's denial. *See, e.g., Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 1110 (1971); *Glenn v. City of Tyler,* 242 F.3d 307 (5th Cir. 2001.) In order to establish the lack of probable cause, Plaintiff must prove that the legality of his conduct was clearly established. *Sorenson v. Ferrie,* 134 F.3d 325 (5th Cir. 1998). The Fifth Circuit is "not willing to second guess the officer ... who must act on the spur of the moment if that officer's action can be classified as 'arguably reasonable.' " *Glenn; Gibson v. Rich,* 44 F.3d 274, 277. (5th Cir. 1995.) In addition, if officers of reasonable competence *could* disagree on whether or not there was probable cause to arrest a defendant, immunity should be recognized. *Gibson; Babb v. Dorman,* 33 F.3d 472, 477 (5th Cir.1994). Even though Plaintiff has not presented any evidence that another officer would disagree with Bolch's probable cause, both individual defendants would be entitled to qualified immunity even assuming that probable cause was lacking.

**III.    No policy, custom, or practice exists to create liability against county.**

Plaintiff cannot prevail on his claims against Jim Hogg County. Counties and supervisors are not liable for an employee's constitutional violations unless the plaintiff's injury results directly from a municipal custom or policy made with deliberate indifference. *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203 (1989); *Baker v. Putnal,* 75 F.3d 190, 200 (5th Cir.1996).

Plaintiff urges the court to impose liability upon the county for alleged lack of training and urges the court to find the county was deliberately indifferent based on this one incident involving Plaintiff. Plaintiff's reliance on the "single exception" basis for deliberate indifference is misplaced. Although Plaintiff cites to *McClendon v. City of Columbia,* 258 F.3d 432 (5th Cir. 2001), *McClendon* reiterates that it generally rejects the application of the single incident showing, noting that "proof of a single incident ordinarily is insufficient to hold a municipality liable for inadequate training."

3

*(citing Gabriel v. City of Plano,* 202 F.3d 741 (5th Cir.2000); *Snyder v. Trepagnier,* 142 F.3d 791, 798 (5th Cir.1998)). *McClendon* also mentions that it allowed liability to attach for a single incident once, in *Brown v. Bryan County, Oklahoma,* 219 F.3d 450 (5th Cir.2000), a case in which the court found that the County was liable under the single incident exception where it failed to provide *any* training or supervision for a young, inexperienced officer with a record of recklessness. The *McClendon* court emphasized that there is a difference between *Bryan's* complete failure to train and a failure to train in a limited area. 258 F.3d at 442-43. *Bryan* is simply inapplicable.

Deliberate indifference requires "an <u>intentional choice</u>, not merely an unintentionally negligent oversight." *Rhyne v. Henderson County,* 973 F.2d 386, 392 (5th Cir.1992)(emphasis added). The Fifth Circuit has further noted that "We can reasonably expect--if the need for training in this area was 'so obvious' and the failure to train was 'so likely to result in the violation of constitutional rights'--that the [Plaintiff] would be able to identify other instances of harm arising from the failure to train. The fact that they did not do so undercuts their deliberate indifference claim." *Conner v. Travis County,* 209 F.3d 794 (5th Cir. 2000.) It usually takes even more than an expert witness to prove deliberate indifference. *Id.* Plaintiff cannot meet the high standard required by the Fifth Circuit to prove liability against the county. Summary judgment is therefore proper.

### IV. Defendants entitled to immunity

For the reasons discussed above and in Defendant's Motion for Summary Judgment, Plaintiff can simply not meet the high standard required to disprove Defendants' entitlement to immunity. Qualified immunity is an area of law as to which summary judgment may be granted, as is the interpretation of statutes. *Behrens v. Pelletier,* 516 U.S. 299, 305-7 (1996); *Edwards v. Aguillard,* 482 U. S. 578, 595-96 (1987). Defendants Bolch and Ybanez are entitled to qualified/official

immunity as they acted in good faith based on beliefs that were objectively reasonable at the time. To controvert good-faith element of official immunity on summary judgment, the non-movant must establish that no reasonable official in the movant's position could have believed the conduct was justified; additionally good faith in official immunity cases must be measured against a standard of objective legal reasonableness, without regard to the officer's subjective state of mind. *Cameron County v. Carrillo*, 7 S.W.3d 706 (Tex.App.-Corpus Christi,1999); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex.1994). Plaintiff has not disproved the individual Defendants' immunity, nor has he shown evidence that he was harmed by any custom, policy or practice that was created by Jim Hogg County with deliberate indifference. Thus, all Defendants are entitled to immunity.

## V. Plaintiff has not suffered any actionable physical or emotional loss

Plaintiff claims that, as a result of the arrest made the basis of this lawsuit, he has suffered a bruised knee and emotional distress. There is no competent evidence to support these allegations, which should be dismissed.

Plaintiff has claimed that Defendant Bolch slammed the door of the police car in such a way that it bruised Plaintiff's knee. Plaintiff claims this alleged act constitutes excessive force, assault and/ or negligence. Pre-trial detainees who allege they were injured outside jail must prove a significant injury which resulted directly and only from the unreasonable use of excessive force. U.S. CONST. amend. IV; *U.S. v. Harris*, 293 F.3d 863 (5th Cir. 2002). Even if Plaintiff's claims are taken as true, a bruise do not rise to the level of a significant injury. *See Wise v. Carlson*, 902 F.2d 417 (5th Cir.1990)(chest and forearm bruises, upper eyelid hematoma was not significant injury).

Similarly, Plaintiff's claims of emotional distress, even if taken as true, do not rise to the level of severe emotional distress that is actionable under Texas law. *Regan v. Lee*, 879 S.W.2d 133,

136 (Tex.App.-Houston [14th Dist.] 1994, no writ)  Additionally, Plaintiff's own deposed testimony reveals that he never sought any sort of treatment whatsoever for these alleged physical or emotional injuries.  (See Exhibit "A", pg. 130, Lines 19-25 and pg. 131, lines 1-2.)

WHEREFORE, PREMISES CONSIDERED, Defendants, Jim Hogg County, Texas; Isaac Bolch, in his Individual and Official Capacities; and Gilbert Ybanez, in his Individual and Official Capacities, respectfully request that the Court grant their Motion for Summary Judgment and enter a take-nothing judgment in Defendants' favor as to all of Plaintiff's claims and grant these Defendants such other and further relief to which they may show themselves justly entitled.

Signed on October 30, 2002.

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.

International Plaza, Ste. 460

3505 Boca Chica Blvd.

Brownsville, Texas 78521

Telephone: (956) 541-1846

Facsimile: (956) 541-1893

By: _____
Eileen Leeds            w/p aly

State Bar No. 00791093

Federal I.D. No. 16799

Attorney in Charge

Amy Lawler Gonzales

State Bar No. 24029579

Federal I.D. No. 28489

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has on October 30, 2002 been delivered to counsel listed below, via fax and certified mail, return receipt requested.

Mr. Michael R. Cowen

765 E. 7th Street, Suite A

Brownsville, Texas 78520

_____
Eileen M. Leeds

## CERTIFICATE OF CONFERENCE

The rules of this Court do not require a certificate of conference for this motion.

_____
Eileen M. Leeds

IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOHN GILBERT | § § | |
| VS. | § § | CIVIL ACTION NO. B-01-054 |
| JIM HOGG COUNTY, TEXAS, ET AL | § § | |

CONDENSED TRANSCRIPT & WORD INDEX

## DEPOSITION OF JOHN ANTHONY GILBERT

JUNE 10, 2002

*PREPARED FOR MS. LEEDS BY:*

SCHWAB COURT REPORTING SERVICE

2900 CENTRAL BOULEVARD, SUITE C
P. O. BOX 3665
BROWNSVILLE, TEXAS 78520

(956) 544-5126 • FAX (956) 542-8842





DEFENDANT'S EXHIBIT A

Page 129

1  when you first get hired. And there's no set --
2  because it's such a long investigation, sometimes
3  they take five years. Sometimes it may take longer.
4  It just depends how often you've moved, credit
5  history. All different types of things.
6      Q  How is your credit history?
7      A  To my knowledge it's well.
8      Q  Is there anything else that could keep you
9  from becoming a first line supervisor if you sought
10 the position other than, as you claim, this
11 particular incident?
12     A  No.
13     Q  Have you had any other kind of write-ups
14 or disciplinary problems at all?
15     A  Let me see. Yes.
16     Q  Tell me about them.
17     A  I lost my binoculars during the course of
18 my duties.
19     Q  Okay. What else?
20     A  I think that's it.
21     Q  So if we get your personnel file, you
22 should just have one write-up in there for losing
23 your binoculars?
24     A  That's what I'm thinking. In ten -- to my
25 knowledge -- I mean, it's possible that I might have

Page 130

1  something in my file that I don't know about.
2      Q  That you don't know about? Okay.
3      A  I have a government credit card that -- I
4  was detailed, came back on detail -- from detail and
5  then you have to submit a voucher. I was counseled
6  on that, but it was beyond my control simply because
7  I submitted my voucher at the allotted time.
8          However, it took Region up in
9  Washington five or six months to reimburse me, so it
10 took that five or six months for me to pay back my
11 government credit card. And I was given just some
12 oral admonishment and told, "Don't do it again."
13     Q  Okay. Anything else?
14     A  To my knowledge, no.
15     Q  Okay. Have you sought any K-9 position
16 while you've been in Brownsville?
17     A  No. There's no positions available. They
18 are filled.
19     Q  Have you seen any medical personnel or
20 healthcare practitioner of any kind as a result of
21 this incident?
22     A  No, ma'am.
23     Q  Meaning mental health or physician?
24     A  No, ma'am.
25     Q  Did you see any doctor as a result of the

Page 131

1  injury to your knee?
2      A  No, ma'am.
3      Q  When were those pictures taken?
4      A  The day I got out of jail, I went back to
5  the house. It was the next morning I took the
6  picture. I didn't have access to a camera.
7      Q  Okay. What day of the week did this occur
8  on?
9      A  I'm not -- I don't know, ma'am.
10     Q  Okay. How long --
11     A  It was the day after my birthday. That's
12 all I remember. It was my birthday gift from the
13 county.
14     Q  How long did you stay in jail?
15     A  I had no concept of time because I didn't
16 have a watch. I could give you a -- what I felt.
17 It felt to me, I don't know, ten hours.
18     Q  How long did it really take? What time
19 did this happen?
20     A  I don't know.
21     Q  What time did --
22     A  I think it was -- it was about the time
23 kids were getting out of school, so it was between
24 3:00 and 4:00.
25     Q  What time did you get out of jail?

Page 132

1      A  It was dark. I think it -- maybe 7:00,
2  maybe.
3      Q  P.M.?
4      A  Yes.
5      Q  Okay. What happened for you to get out of
6  jail? I mean, what -- did you call somebody? What
7  happened?
8      A  After being in jail for a while, I was
9  allowed to use the phone. And the first person I
10 called was my first line -- or I called a first line
11 supervisor, which was George Diaz. And I told him
12 that I was in jail and I had been arrested and
13 charged with unlawful carrying of a weapon.
14         And he told me that he would be right
15 over to get me out. But I never saw -- he never
16 showed up. And I don't know what transpired. Some
17 more time went by and then they took me out of the
18 cell and they took me into this little room, and
19 there was a J.P. there. He was charging me with
20 unlawful carrying of a weapon.
21         And then while I was in that waiting
22 area, that was when the sheriff came into the
23 office. Apparently -- and this is speculation.
24 This is secondhand, after the fact that my
25 supervisor told me that the sheriff called to the

```
 1
 2         I, JOHN ANTHONY GILBERT, have read the
    foregoing deposition and hereby affix my signature
 3  that same is true and correct, except as noted
    above.
 4
 5
                                  [signature: John Anthony Gilbert]
 6                                _____
                                  JOHN ANTHONY GILBERT
 7
 8
 9
10  THE STATE OF    Texas      )
11  COUNTY OF    Cameron       )
12
13         Before me, ___Josie O. Lucio___, on this day
    personally appeared JOHN ANTHONY GILBERT, known to
14  me (or proved to me on the oath of
    _____ or through
15  _____ (description of identity
    card or other document)) to be the person whose name
16  is subscribed to the foregoing instrument and
    acknowledged to me that he executed the same for the
17  purposes and consideration therein expressed.
18         (Seal) Given under my hand and seal of office
    this  3rd  day of   July   ,  2002 .
19
20     [Seal: JOSIE O. LUCIO
21      Notary Public,                [signature: Josie O. Lucio]
        State of Texas                _____
        My Comm. Exp. 08-22-2004]     NOTARY PUBLIC IN AND FOR
22                                    THE STATE OF   Texas
23
24
25
```